UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**J. DANIEL LUGOSCH, III; ROBERT L. UNGERER; JOHN
A. BERSANI; EDWARD A. KELLOGG; JOHN C.
CHARTERS; PETER C. STEINGRABER; RICHARD K.
ASKIN; and WILLIAM TAPELLA,**

                        **Plaintiffs,**


            **-v.-**                                    **1:00-CV-0784**

**ROBERT J. CONGEL, individually and as General Partner of
Woodchuck Hill Associates, Riesling Associates, Madeira
Associates, and Moselle Associates; PYRAMID COMPANY OF
ONONDAGA; EKLECCO L.L.C.; WOODCHUCK HILL
ASSOCIATES, RIESLING ASSOCIATES, MADEIRA
ASSOCIATES, AND MOSELLE ASSOCIATES; JAMES A.
TUOZZOLO; ROBERT BRVENIK; MARC A. MALFITANO;
and SCOTT R. CONGEL,**

                        **Defendants,**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆


**THE HERALD COMPANY and CAPITAL NEWSPAPERS
DIVISION OF THE HEARST CORPORATION, Publisher of the
Albany Times Union,**

                        **Intervenors.**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:                                OF COUNSEL

BOIES, SCHILLER & FLEXNER, LLP              Michael Endler, Esq.
100 State Street                            Jeffrey S. Shelly, Esq.
Albany, New York 12207
and
GREEN, SEIFTER LAW FIRM                     Daniel J. French, Esq.
900 One Lincoln Center
Syracuse, New York
and
OFFICE OF DONALD T. KINSELLA               Donald T. Kinsella, Esq.
90 State Street, Suite 1440
Albany, New York, 12207
Attorneys for Plaintiffs

GOODWIN, PROCTER LAW FIRM                    Anthony S. Fiotto, Esq.
Exchange Place                               Christopher D. Moore, Esq.
53 State Street                              Kai W. Lyman, Esq.
Boston, MA 02109-2881                        Paul Ware, Jr., Esq.
and
ISEMAN, CUNNINGHAM LAW FIRM                  Michael J. Cunningham, Esq.
9 Thurlow Terrace
Albany, NY 12203
and

MACKENZIE, HUGHES LAW FIRM                   Nancy L. Pontius, Esq.
101 South Salina Street                      Stephen T. Helmer, Esq.
PO Box 4967
Syracuse, NY 13221-4967
Attorneys for Defendants Robert J. Congel,
Woodchuck Hill Associates, Riesling Associates,
Madeira Associates, and Moselle Associates

WINSTON, STRAWN LAW FIRM                     Gordon A. Coffee, Esq.
1700 K Street N.W.                           Krista M. Enns, Esq.
Washington, DC 20006                         David Sharp, Esq.

GOODWIN, PROCTER LAW FIRM                    Anthony S. Fiotto, Esq.
Exchange Place                               Christopher D. Moore, Esq.
53 State Street                              Kai W. Lyman, Esq.
Boston, MA 02109-2881                        Paul F. Ware, Jr., Esq.

ISEMAN, CUNNINGHAM LAW FIRM                  Michael J. Cunningham, Esq.
9 Thurlow Terrace
Albany, NY 12203
and
DADD, NELSON LAW FIRM                        Eric T. Dadd, Esq.
11 Exchange Street
P.O. Box 238
Attica, NY 14011
Attorneys for Defendants Pyramid
Company of Onondaga and EklecCo L.L.C.

GOODWIN, PROCTER LAW FIRM                    Anthony S. Fiotto, Esq.
Exchange Place                               Christopher D. Moore, Esq.
53 State Street                              Kai W. Lyman, Esq.
Boston, MA 02109-2881                        Paul F. Ware, Jr., Esq.
and
KING, SPAULDING LAW FIRM                     John M. Bray, Esq.
1700 Pennsylvania Avenue, NW                 Michael J. Ciatti, Esq.
Washington, DC 20006-4706
and
MACKENZIE, HUGHES LAW FIRM                   Nancy L. Pontius, Esq.
101 South Salina Street                      Stephen T. Helmer, Esq.

PO Box 4967
Syracuse, NY 13221-4967
and
ISEMAN, CUNNINGHAM LAW FIRM                    Michael J. Cunningham, Esq.
9 Thurlow Terrace
Albany, NY 12203
Attorneys for Defendants Robert Brvenik,
James A. Tuozzolo and Marc A. Malfitano

COSTELLO, COONEY LAW FIRM                      Edward G. Melvin, Esq.
205 South Salina Street                        Robert J. Smith, Esq.
4th Floor
Syracuse, NY 13202
and
KIRKLAND, ELLIS LAW FIRM                       James P. Gillespie, Esq.
655 Fifteenth Street, NW                       Rebecca R. Anzidei, Esq.
Suite 1200
Washington, DC 20005
and
GOODWIN, PROCTER LAW FIRM                      Anthony S. Fiotto, Esq.
Exchange Place                                 Christopher D. Moore, Esq.
53 State Street                                Kai W. Lyman, Esq.
Boston, MA 02109-2881                          Paul F. Ware, Jr., Esq.
and
ISEMAN, CUNNINGHAM LAW FIRM                    Michael J. Cunningham, Esq.
9 Thurlow Terrace
Albany, NY 12203
Attorneys for Defendant Scott R. Congel

McNamee, Lochner Law Firm                      Michael J. Grygiel, Esq.
677 Broadway
Albany, NY 12207-2503
Attorney for Intervenor Capital Newspapers
Division of the Hearst Corporation, publisher
of the Albany Times Union and The Herald Company

**Norman A. Mordue, Chief Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

In *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) the Second Circuit

remanded to this Court the motion by Herald Company and Capital Newspapers Division of the

Hearst Corporation, Publisher of the Albany Times Union ("intervenors"), to intervene for the

limited purpose of securing access to documents filed under seal.[1]  This Court referred the matter to United States Magistrate Judge Randolph F. Treece.  Magistrate Judge Treece issued an excellent and thorough Report and Recommendation and Order dated March 7, 2006 (Dkt. No. 470), recommending that the Court grant the motion to intervene and making specific recommended findings regarding the continued sealing of the contested documents.  The Court refers the reader to Magistrate Judge Treece's Report and Recommendation and Order for further background information.

Thereafter, plaintiffs submitted objections on March 17, 2006 (Dkt. No. 471); intervenors submitted objections on March 17, 2006 (Dkt. No. 473); and defendants submitted partial objections on March 21, 2006 (Dkt. No. 475).  All parties stipulated on March 27, 2006 (Dkt. No. 477) to file responses to the objections simultaneously on April 4, 2006.  The Court approved the stipulation on March 30, 2006 (Dkt. No. 479).  Responses were filed on April 4, 2006, by plaintiffs (Dkt. No. 483), intervenors (Dkt. No. 484), and defendants (Dkt. No. 487).

In the *Lugosch* decision, the Second Circuit found that a presumption of access applied to the contested documents and stated that continued sealing may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim.  435 F.3d at 124.  That court further observed that the attorney-client privilege might be a compelling reason justifying continued sealing and that,

---

[1] On June 24, 2005, this Court issued a Memorandum-Decision and Order (Dkt. No. 417) affirming Magistrate Judge Treece's Order (Dkt. No. 404) holding in abeyance the intervenors' motion to intervene for the limited purpose of securing access to documents filed under seal  (Dkt. Nos. 356, 380).  Intervenors filed a notice of appeal to the Second Circuit on July 13, 2005 (Dkt. No. 419).  On January 10, 2006, the Second Circuit handed down the decision in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

even if applicable, such privilege may be waived if the party asserting it placed in issue the contents of the contested document.  The Second Circuit remanded to this Court for a fact-specific inquiry as to whether (1) the contested documents are subject to attorney-client privilege, and (2) defendants waived the privilege by placing in issue the contents of the privileged information.[2]  *Id.* at 125.  The Second Circuit further observed, based on the terms of the Confidentiality Order, that "it is difficult to see how the defendants can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret[,]" but added that, on remand, "the defendants should have the opportunity to call the district court's attention to any particular circumstances surrounding the production of a contested document." *Id.* at 126.  And that court directed that, in the event that the district court finds that certain documents should continue under seal, it  must make specific, on-the-record findings that higher values necessitate a narrowly tailored sealing.  *Id.*

## DISCUSSION

This Court agrees with Magistrate Judge Treece's conclusion that defendants' disclosure

---

[2]

The Second Circuit stated:

> We are therefore left with a fact-specific inquiry as to whether (1) the contested documents are subject to attorney-client privilege, and (2) defendants waived the privilege by placing in issue the contents of the privileged information. *In re von Bulow v. von Bulow*, 828 F.2d 94, 102 (2d Cir.1987) (privilege may be waived when holder of privilege makes assertions placing privileged information at issue); *see also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991) ("[P]rivilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."). There is nothing in the record to allow us to review or conduct such an inquiry. Accordingly, we remand for the district court to make the necessary findings.

435 F.3d at 125.

to plaintiffs of documents pursuant to the parties' March 14, 2001 Confidentiality Order (Dkt. No. 55) does not constitute a waiver of privilege. This Court also agrees with Magistrate Judge Treece that by virtue of the provisions of the Partnership Agreements,[3] and in view of the fact that they are suing in their individual capacities, the minority partners lack authority to waive the attorney-client or work-product privilege on behalf of the Partnerships.

**Undisputed recommendations**

Defendants do not object to Magistrate Judge Treece's conclusion that certain of the documents in issue are not privileged communications. This Court adopts Magistrate Judge Treece's ruling that the following documents are not privileged: Tabs 6, 8, 10, 11, 13 (p. 1), 14, and 24. The portions of the deposition of Marc A. Malfitano, Esq. (Tab 26, pp. 234, 235, and 236) which relate to Tab 6 are also unsealed. The portion of page 56 of Tab 2 (Dkt. No. 371) that relates to Tab 11 is unsealed.

Further, defendants do not object to Magistrate Judge Treece's conclusion that there has been an at-issue waiver regarding the disputed portion of Tab 17. Defendants do not object to the recommendation that pages 155, 156, 158, 161, and 213 of Tab 29, the deposition transcript of

---

[3]

The Partnership Agreements provide:

> The executive committee, with the authority granted to it under the agreement, shall have the exclusive right to manage the business of the Partnership and is hereby authorized to take any action of any kind and to do anything and everything in accordance with the provisions of this agreement.

They further provide:

> [E]xcept as expressly provided hereunder, the authority of any Partner to manage the business of the Partnership shall be exercised only by the Executive committee and, except as expressly so provided, no Partner other than the Executive Committee shall have any control over Partnership.

James A. Tuozzolo, be unsealed.  Nor do they object to his recommendation that page 168 (line 7) through page 169 (line 5) of Tab 22, John A. Bersani's deposition transcript, be unsealed.  These items are unsealed and available for public viewing.

**Defendants' objections**

Defendants object to Magistrate Judge Treece's recommendations regarding documents at Tabs 5 and 9.

### *Malfitano Memo (Tab 5)*

Magistrate Judge Treece correctly found that Tab 5, a memo from Marc A. Malfitano, Esq. to Michael P. Shanley, Esq. dated June 30, 1999, is not an attorney-client communication but rather is a business memorandum, although it is from one lawyer to another.  Moreover, for the reasons discussed below in connection with the Shearman & Sterling Opinion Letter, the Court also finds that there is an at-issue waiver regarding Tab 5 insofar as it concerns who made certain determinations and whether certain information was provided to the partners.  Tab 5 is unsealed as well as the corresponding deposition testimony in Malfitano's deposition transcript at Tab 26 (pp. 105 [lines 20-25], 106, 107, 108, 110, 111, 112, 113, 114, 116, 117, 118, 119 [lines 1-7 and 21-24], 121, 122, 123, 124, 125, 126, 127, and 128).

### *Hoffman Memo (Tab 9)*

Defendants also object to the unsealing of page 1 of Tab 9, a memo to the file by defendants' counsel Richard S. Hoffman, Esq., dated October 27, 1993.  This reflects attorney work product and is thus privileged.  Magistrate Judge Treece found an at-issue waiver stemming from defendants' argument on the summary judgment motion that the alleged overcharges by Pyramid Management Group ("PMG") to the mall Partnerships could not be part of a fraudulent scheme because the charges were disclosed in the financial statements.

For the same reasons as are discussed below in connection with the Shearman & Sterling Opinion Letter, the Court finds an at-issue waiver with respect to page 1 of this memo.  In asserting that the charges to the Partnerships were disclosed in the financial statements and thus could not be fraudulent, defendants placed at issue their alleged knowledge that the disclosed charges, although they appeared to be proper, were actually excessive.  In other words, defendants' assertions regarding the charges, in fairness, require disclosure of the protected communication.  Accordingly, the Court agrees with Magistrate Judge Treece's recommendation that page 1 of Tab 9 be unsealed.

There is no waiver regarding pages 2 and 3.  They remain sealed.

**Plaintiffs' and Intervenors' objections**

*Hoffman Memo (Tab 7)*

Tab 7 is a memo to the file by Richard S. Hoffman, Esq., dated March 8, 1996.  The Court agrees with Magistrate Judge Treece that it is privileged and that the privilege has not been waived.  That the memo may be relevant to issues in the case does not, without more, create a waiver.  *See United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991)  Accordingly, Tab 7 and the related references in Tab 1 (redactions on pp. 37 and 38), and Tab 26 (redactions on pp. 237, 238, 239, and 240) shall remain under seal.

*Malfitano Letter (Tab 12)*

Tab 12, a letter dated December 5, 2000, from Marc A. Malfitano, Esq. to Kenneth C. Smurzynski, Esq., is privileged.  The privilege has not been waived.  Thus, this document remains under seal.

*Malfitano Memo (Tab 13)*

The Court agrees with Magistrate Judge Treece's treatment of Tab 13, a memo from Marc

A. Malfitano, Esq. dated January 17, 2000.  Page 1 of Tab 13 is unsealed; as noted above, defendants do not object.  The portion of page 56 of Tab 2 (Dkt. No. 371) that relates to page 1 of Tab 13 is likewise unsealed.  The redactions recommended by Magistrate Judge Treece on pages 2 and 3 of Tab 13 are approved.

### _Shearman & Sterling Opinion Letter (Tab 18) and related items_

The Shearman & Sterling Opinion Letter (Tab 18), was written on July 6, 1999 by outside counsel in response to the letter of June 24, 1999 (Tab 15) by Michael P. Shanley, Esq. on behalf of defendants.  Shanley's letter specifically requested legal opinions regarding aspects of the purchase in 1990 of the Bonwit Teller department store chain ("Bonwit") by Bonwit Teller Limited Partnership and the ongoing obligations stemming therefrom.[4]  The Court agrees with Magistrate Judge Treece that these letters are privileged.

Plaintiffs contend that defendants have effected an at-issue waiver of the privilege regarding these letters.  One of plaintiffs' claims in this action is that, through their allegedly false and misleading financial reporting, defendants wrongfully shifted onto Crossgates and Buffalo certain acquisition costs and operating losses of Bonwit, and that they continue to do so.  According to the report of plaintiffs' expert, Legal & Scientific Analysis Group, Inc. ("LSAG"), beginning in 2000, Crossgates began paying back the amounts RDE owed to WHA, and "all the cash flow generated by Crossgates was paid to RDE and no distributions were made to the

---

[4]
The general partner in Bonwit Teller Limited Partnership is Bontel Corporation, which is owned and controlled by Robert J. Congel and his family.  The limited partner of Bonwit Teller Limited Partnership is Retail Distribution Enterprises ("RDE"), a general partnership comprising Pyramid Crossgates Company ("Crossgates"), Pyramid Company of Buffalo ("Buffalo") and Pyramid Company of Onondaga.  Plaintiffs Lugosch, Ungerer, and Steingraber are or were partners in Crossgates and/or Buffalo.  It appears that RDE borrowed funds for the Bonwit acquisition from defendant Woodchuck Hill Assoc. ("WHA"), a partnership controlled by Robert J. Congel.

partners in 2000 and 2001." The LSAG report states that, through December 31, 2000, Crossgates and Buffalo each were charged with $13.2 million dollars of Bonwit's losses.

Defendants' motions for summary judgment seek dismissal of plaintiffs' Bonwit-related claims, on the ground that plaintiffs "knowingly and actively participat[ed] in the business practices that they now claim were concealed from them" or at least had "ample access to documents and discussions disclosing the complained-of practices[.]"[5] More specifically, in paragraph 391 of their Statement of Undisputed Facts in support of summary judgment, defendants asserted the following: "Plaintiffs were aware of the Bonwit Teller acquisition and its ownership structure, as demonstrated by plaintiffs' testimony regarding Bonwit Teller, documents reflecting their participation in the decision-making process, financial and other documents, and plaintiffs' own expert testimony." In their Memorandum of Law in support of their motion for summary judgment, defendants contended:

> As to whether the acquisition of Bonwit could be part of a "scheme to defraud," the undisputed evidence establishes that plaintiffs: (i) were intimately involved in Pyramid's decision to purchase Bonwit Teller, including participating in daily morning meetings on the topic – indeed, several plaintiffs were the most enthusiastic advocates of the acquisition; (ii) were fully aware of the downside risk of the purchase; (iii) were aware of the expansion of Bonwit Teller into the Crossgates Mall; (iv) executed a partnership incumbency certificate on behalf of the Buffalo Partnership ratifying the decision to invest

---

[5]
Defendants' Reply to Plaintiffs' and Newspapers' Objections to the Report and Recommendation and Order states on p. 9:

> Defendants' arguments that there was no scheme to defraud and no justifiable reliance rest on the undisputed evidence that Plaintiffs had ample access to documents and discussions disclosing the complained-of practices, and not on whether Plaintiffs actually knew about those practices. Reliance does not depend on what the allegedly defrauded party knew where, as here, that party had access to documents disclosing the allegedly-fraudulent behavior.

(Dkt. No. 487, citation to record omitted.)

in Bonwit Teller and to participate in the Bonwit ownership structure; (v) were explicitly informed, in writing, every year beginning in 1990, as to the exact amount of the Bonwit Teller related debt for which their partnerships were responsible; (vi) spoke repeatedly and enthusiastically to the press about the Bonwit transaction; and (vii) year after year, commencing as early as 1990, submitted tax forms to the IRS and received tax benefits for the very Bonwit Teller debt they now claim was never disclosed to them.

(Citations to record omitted.)  In defending against Bonwit-related claims, defendants rely on their disclosures regarding Bonwit-related obligations not only in the early 1990's, but also in and after 1999.  For example, they point to disclosures in the financial statements for Buffalo from 1990 through 1999.  And the records attached to the declaration of defendants' expert, Stanley R. Perla, CPA, indicate that Crossgates and Buffalo were still reporting capital contributions and net losses relating to Bonwit in 1999, 2000 and 2001.

In the context of this case, the Court finds that, by contending that they disclosed to plaintiffs the Bonwit-related business practices from 1990 through 1999 or later (or that plaintiffs had ample access to such disclosures), defendants placed in issue their alleged awareness that the disclosures misleadingly represented that Crossgates and Buffalo were obligated to pay debt (and/or loss) that in fact they were not obligated to pay.  In particular, defendants placed in issue communications bearing on whether defendants had grounds to believe that Crossgates and Buffalo were not liable for at least some of the debt (and/or loss) allocated to them, and whether defendants nevertheless concealed such grounds, used their position of confidence to impose the debt (and/or loss) on Crossgates and Buffalo from 1990 to 2001, and purposefully provided misleading financial statements and other documents to plaintiffs.  Defendants' 1999 request for legal opinions regarding Bonwit-related business practices, as well as the substance of those legal opinions and related items, are communications bearing on these questions.  Accordingly, they are subject to an at-issue waiver.

-11-

This Court's finding of at-issue waiver regarding the Shearman & Sterling Opinion Letter and related items is not based merely on a finding of possible relevance.  *See Bilzerian*, 926 F.2d at 1292.  Nor does the Court base this ruling on the view that, by arguing that there was a "culture of disclosure and transparency," defendants have placed in issue every undisclosed item bearing on any issue in the case.  Rather, applying the law as articulated by the Second Circuit on the appeal herein, 435 F.3d at 125, the Court finds that, in fairness, defendants' assertions regarding their disclosure of Bonwit-related business practices require examination of the protected communications in dispute.  Thus, the privilege is implicitly waived with respect to those communications.  *See Bilzerian*, 926 F.2d at 1292-93; *In re von Bulow v. von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987).

Accordingly, in this respect the Court disagrees with Magistrate Judge Treece and holds that defendants impliedly waived the attorney-client privilege with respect to the Shearman & Sterling Opinion Letter and related documents and testimony.  The following items or redacted portions thereof are unsealed: Tab 15; Tab 16; Tab 18; Tab 19 (principal documents at issue); and corresponding references: Tab 1 (pp. 29, 30, 45, 46, and 75); Tab 2 (pp. 109 and 110); Tab 3 (pp. 12 and 13); Tab 4 (p. 6, n. 9); Tab 26 (redacted portions of pp. 54, 55, 56, 57, 66, 67, 68, 94, 95, 96, 98, 99, 100, 102, 103, 104, 105 [lines 1-10], 115, 119 [lines 8-14 and 18-19], 120, 132, and 133); Tab 28 (redacted pp. 157, 158, 159, 160, 161, 162, 163, 164, 165, 167, 256, 257, and 258); Tab 29 (redacted pp. 64, 65, 66, 67, and 132).

*Shelly Letter and Exhibits (Tab 20)*

Tab 20 is a letter-memorandum from plaintiffs' counsel, Jeffrey S. Shelly, Esq., to Magistrate Judge Treece dated September 12, 2003.  As set forth in the following paragraphs, Magistrate Judge Treece recommends redactions from three items attached to the September 12,

-12-

2003 letter-memorandum.  He further recommends corresponding redactions from the letter-memorandum of references to redacted portions of those three items.

The disputed items at Tab 20 concern alleged overcharges by PMG to The Limited and other tenants of the various malls.  Unlike the alleged overcharges by PMG to the Partnerships, there is no at-issue waiver regarding PMG's charges to tenants.  Essentially, plaintiffs argue that evidence of alleged overcharges to tenants is relevant to their claims; relevance does not, however, establish a waiver.  *See Bilzerian*, 926 F.2d at 1292.

The Court adopts Magistrate Judge Treece's handling of Exh. 4 to Tab 20, a meeting summary by Eric Dadd, Esq., with a fax banner date of November 13, 2000.  Magistrate Judge Treece properly found that portions were privileged and that there was no waiver.  Thus, those portions shall be redacted and remain under seal; they appear on every page of the meeting summary (pp. 1-5).  The Court also adopts Magistrate Judge Treece's  redaction of references to privileged portions of Exh. 4 from the transcript of the deposition of Marc A. Malfitano, Esq., Exh. 3 to Tab 20.  Thus, the recommended redactions shall be made on the following pages of Malfitano's deposition: 148, 149, 150, 151, 154, 155, 156, 157, 159, 160, 164, 222, 242, 244, 245, 246, 247, and 248.  And the Court agrees with Magistrate Judge Treece's recommended redaction at page 36 of Tab 1, which refers to this meeting summary.

The Court also agrees with Magistrate Judge Treece that Exh. 6 to Tab 20, comprising the October 17, 2000 memo from Malfitano, and the accompanying October 16, 2000 draft letter, is privileged both as an attorney-client communication and as attorney work product.  The privilege has not been waived.  Thus, it remains under seal.

Finally, the Court agrees with Magistrate Judge Treece's recommended redactions from the second page of the September 12, 2003 letter-memorandum from plaintiffs' counsel to

Magistrate Judge Treece at Tab 20.

   *Meeting Summary and Depositions (Tab 21)*

   Tab 21, Exh. 6, is the meeting summary by Dadd which was already discussed above (as Tab 20, Exh. 4); the redacted portions remain under seal.  Tab 21 also includes pages of the transcript of the deposition of Malfitano (Exh. 10); defendants do not object to Magistrate Judge Treece's finding of waiver and his unsealing of the related portions of the transcript (Tab 21, Exh. 10, pp. 172 and 173; also at Tab 26).  Tab 21 further includes a portion of the transcript of the deposition of James A. Tuozzolo (Tab 21, Exh. 11; also at Tab 29); the Court agrees with Magistrate Judge Treece that lines 12-25 of page 181 of Tuozzolo's deposition transcript should remain sealed.

   *Bersani Deposition (Tab 22)*

   Tab 22 is a portion of the transcript of the deposition of John A. Bersani.  Defendants do not object to Magistrate Judge Treece's recommendation that page 168 (line 7) through page 169 (line 5) be unsealed.  Magistrate Judge Treece recommends that the last word on page 167 and the first 6 lines on page 168 remain sealed as subject to an unwaived privilege.  The Court agrees.

   *Mammolito Deposition (Tab 23)*

   Michael A. Mammolito, an employee of PMG, testified about his conversations with two lawyers (one outside counsel, one in-house counsel) representing PMG with respect to Crossgates' tax litigation with the Town of Guilderland.  The Court agrees with Magistrate Judge Treece that these conversations are protected by attorney-client and attorney work product privilege, and that there has been no waiver.  The Court approves the recommended redactions at pp. 48, 49, 50, 95, 96, 97, 98, and 99.

   *Kenan Deposition (Tab 25)*

Magistrate Judge Treece found that portions of the deposition transcript of Bruce Kenan, at Tab 25, were subject to an unwaived privilege.  These are page 64 (line 25) through page 65 (line 3).  He also recommends that the redacted portions of pages 151 and 152 be unsealed and available for public viewing. The Court agrees.

### *Malfitano Deposition (Tab 26)*

In accordance with the above rulings, the redacted portions of the following pages of Tab 26 are unsealed and the pages in their entirety are available to for public viewing:  54, 55, 56, 57, 66, 67, 68, 94, 95, 96, 98, 99, 100, 102, 103, 104, 105, 106, 107, 108, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 132, 133, 138, 139, 143, 144, 145, 172, 173, 203, 234, 235, and 236.

The redacted portions of the following pages of Tab 26 shall remain sealed:  86, 87, 148, 149, 150, 151, 154, 155, 156, 157, 159, 160, 164, 222, 237, 238, 239, 240, 242, 244, 245, 246, 247, and 248.

### *Murphy Deposition (Tab 27)*

The Court agrees with Magistrate Judge Treece that certain portions of the transcript of the deposition testimony of Michele Murphy are subject to unwaived privilege.  Accordingly, the recommended redactions on pages 66, 68 and 70 are approved.

### *Shanley Deposition (Tab 28)*

Tab 28, portions of the transcript of the deposition of Michael P. Shanley, Esq., has already been addressed in connection with the Shearman & Sterling Opinion Letter (Tab 18) and related items.  The redacted portions at Tab 28 are unsealed and are available for public viewing: pages 157, 158, 159, 160, 161, 162, 163, 164, 165, 167, 256, 257, and 258.

### *Tuozzolo Deposition (Tab 29)*

-15-

The Court has already discussed certain portions of the transcript of the deposition of James A. Tuozzolo in connection with the Shearman & Sterling Opinion Letter (Tab 18) and related items; the Court directs that redactions at pages 64, 65, 66, 67, and 132 of Tab 29 be unsealed.

The Court has also addressed certain portions of this transcript in connection with the meeting summary (Tab 21, Exh. 11). As stated, the Court agrees with Magistrate Judge Treece that lines 12-25 of page 181 of the transcript (Tab 21, Exh. 11; also at Tab 29) should remain sealed.

Tuozzolo was also questioned regarding Exh. 6 to Tab 20 (the October 17, 2000 memo from Malfitano and the October 16, 2000 draft letter). These items are subject to an unwaived privilege; accordingly, Tuozzolo's corresponding deposition testimony is privileged. Thus, the Court upholds the recommended redactions at Tab 29, pages 135, 141, 142, 152. The redaction at page 166 is also subject to an unwaived privilege and shall remain sealed.

Defendants do not object to the recommendation that the redacted portions of pages 155, 156, 158, 161, and 213 be unsealed.

### *Viggiano Deposition (Tab 30)*

Magistrate Judge Treece recommends redactions on pages 116, 117, 118, 120, 121, 124, 125, 134, 144, 145, 146, 170, 171, 172, 183, 184, 200, and 201. The Court agrees that these items are privileged and that there has been no waiver. Accordingly, they remain sealed.

### CONCLUSION

It is therefore

ORDERED that the Report and Recommendation and Order of United States Magistrate Judge Randolph F. Treece (Dkt. No. 470) is rejected in part and adopted in part in accordance

-16-

with this Memorandum-Decision and Order; and it is further

ORDERED that the motion by Herald Company and Capital Newspapers Division of the Hearst Corporation, Publisher of the Albany Times Union (Dkt. Nos. 356, 380) is granted in part and denied in part in accordance with this Memorandum-Decision and Order; and it is further

ORDERED that movants are given leave to intervene for the purpose of securing access to documents filed under seal, subject to the limitations set forth herein; and it is further

ORDERED that movants' request for access to documents filed under seal is granted in part and denied in part as follows:

Tab 1: redactions on pages 36, 37 and 38 remain under seal; redactions at pages 29, 30, 45, 46 and 75 are unsealed and available for public viewing.

Tab 2: redactions on pages 56, 109 and 110 are unsealed and available for public viewing.

Tab 3: redactions on pages 12 and 13 are unsealed and available for public viewing.

Tab 4: redaction on page 6, n. 9, is unsealed and available for public viewing.

Tab 5: unsealed and available for public viewing.

Tab 6: unsealed and available for public viewing.

Tab 7: remains under seal.

Tab 8: unsealed and available for public viewing.

Tab 9: page 1 is unsealed and available for public viewing; pages 2 and 3 remain under seal.

Tab 10: unsealed and available for public viewing.

Tab 11: unsealed and available for public viewing.

Tab 12: remains under seal.

Tab13: page 1 is unsealed and available for public viewing; redactions on pages 2 and 3 remain under seal.

Tab 14: unsealed and available for public viewing.

Tab 15: unsealed and available for public viewing.

Tab 16: unsealed and available for public viewing.

Tab 17: unsealed and available for public viewing.

Tab 18: unsealed and available for public viewing.

Tab 19: unsealed and available for public viewing.

Tab 20: Letter to Magistrate Judge Treece, redactions remain sealed; Exh 3, redactions at pages 148, 149, 150, 151, 154, 155, 156, 157, 159, 160, 164, 222, 242, 244, 245, 246, 247, and 248 remain sealed; Exh. 4, redactions remain sealed; Exh. 6 remains sealed.

Tab 21: Exh. 6, redactions remain sealed; Exh. 10, pages 172 and 173 are unsealed and available for public viewing; Exh. 11, redaction at page 181 (lines 12-25) remains sealed.

Tab 22: page 168 (line 7) through page 169 (line 5) are unsealed and available for public viewing; the last word on page 167 and the first 6 lines on page 168 remain sealed.

Tab 23: redactions at pages 48, 49, 50, 95, 96, 97, 98, and 99 remain sealed.

Tab 24: unsealed and available for public viewing.

Tab 25: redaction on page 64 (line 25) through page 65 (line 3) remains sealed; pages 151 and 152 are unsealed and available for public viewing.

Tab 26: Redactions at pages 54, 55, 56, 57, 66, 67, 68, 94, 95, 96, 98, 99, 100, 102, 103, 104, 105, 106, 107, 108, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 132, 133, 138, 139, 143, 144, 145, 172, 173, 203, 234, 235, and 236 are unsealed and the pages in their entirety are available to for public viewing; redactions at pages 86, 87, 148, 149, 150, 151, 154, 155, 156, 157, 159, 160, 164, 222, 237, 238, 239, 240, 242, 244, 245, 246, 247, and 248 remain sealed.

Tab 27: redactions on pages 66, 68 and 70 remain sealed.

Tab 28: redactions on pages 157, 158, 159, 160, 161, 162, 163, 164, 165, 167, 256, 257, and 258 are unsealed and are available for public viewing.

Tab 29: redactions on pages 64, 65, 66, 67, 132, 155, 156, 158, 161, and 213 are unsealed

and are available for public viewing; redactions on pages 135, 141, 142, 152, 166 and 181 (lines 12-25) remain sealed.

Tab 30: redactions on pages 116, 117, 118, 120, 121, 124, 125, 134, 144, 145, 146, 170, 171, 172, 183, 184, 200, and 201 remain sealed.

IT IS SO ORDERED.

May 5, 2006
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge

-19-

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**J. DANIEL LUGOSCH, III; ROBERT L. UNGERER; JOHN
A. BERSANI; EDWARD A. KELLOGG; JOHN C.
CHARTERS; PETER C. STEINGRABER; RICHARD K.
ASKIN; and WILLIAM TAPELLA,**

                                  **Plaintiffs,**


                        **-v.-**                                    **1:00-CV-0784**

**ROBERT J. CONGEL, individually and as General Partner of
Woodchuck Hill Associates, Riesling Associates, Madeira
Associates, and Moselle Associates; PYRAMID COMPANY OF
ONONDAGA; EKLECCO L.L.C.; WOODCHUCK HILL
ASSOCIATES, RIESLING ASSOCIATES, MADEIRA
ASSOCIATES, AND MOSELLE ASSOCIATES; JAMES A.
TUOZZOLO; ROBERT BRVENIK; MARC A. MALFITANO;
and SCOTT R. CONGEL,**

                                  **Defendants,**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆



**THE HERALD COMPANY and CAPITAL NEWSPAPERS
DIVISION OF THE HEARST CORPORATION, Publisher of the
Albany Times Union,**

                                  **Intervenors.**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:                                  OF COUNSEL

BOIES, SCHILLER & FLEXNER, LLP                Michael Endler, Esq.
100 State Street                              Jeffrey S. Shelly, Esq.
Albany, New York 12207
and
GREEN, SEIFTER LAW FIRM                       Daniel J. French, Esq.
900 One Lincoln Center
Syracuse, New York
and
OFFICE OF DONALD T. KINSELLA                  Donald T. Kinsella, Esq.
90 State Street, Suite 1440
Albany, New York, 12207
Attorneys for Plaintiffs

GOODWIN, PROCTER LAW FIRM                    Anthony S. Fiotto, Esq.
Exchange Place                               Christopher D. Moore, Esq.
53 State Street                              Kai W. Lyman, Esq.
Boston, MA 02109-2881                        Paul Ware, Jr., Esq.
and
ISEMAN, CUNNINGHAM LAW FIRM                  Michael J. Cunningham, Esq.
9 Thurlow Terrace
Albany, NY 12203
and

MACKENZIE, HUGHES LAW FIRM                   Nancy L. Pontius, Esq.
101 South Salina Street                      Stephen T. Helmer, Esq.
PO Box 4967
Syracuse, NY 13221-4967
Attorneys for Defendants Robert J. Congel,
Woodchuck Hill Associates, Riesling Associates,
Madeira Associates, and Moselle Associates

WINSTON, STRAWN LAW FIRM                     Gordon A. Coffee, Esq.
1700 K Street N.W.                           Krista M. Enns, Esq.
Washington, DC 20006                         David Sharp, Esq.

GOODWIN, PROCTER LAW FIRM                    Anthony S. Fiotto, Esq.
Exchange Place                               Christopher D. Moore, Esq.
53 State Street                              Kai W. Lyman, Esq.
Boston, MA 02109-2881                        Paul F. Ware, Jr., Esq.

ISEMAN, CUNNINGHAM LAW FIRM                  Michael J. Cunningham, Esq.
9 Thurlow Terrace
Albany, NY 12203
and
DADD, NELSON LAW FIRM                        Eric T. Dadd, Esq.
11 Exchange Street
P.O. Box 238
Attica, NY 14011
Attorneys for Defendants Pyramid
Company of Onondaga and EklecCo L.L.C.

GOODWIN, PROCTER LAW FIRM                    Anthony S. Fiotto, Esq.
Exchange Place                               Christopher D. Moore, Esq.
53 State Street                              Kai W. Lyman, Esq.
Boston, MA 02109-2881                        Paul F. Ware, Jr., Esq.
and
KING, SPAULDING LAW FIRM                     John M. Bray, Esq.
1700 Pennsylvania Avenue, NW                 Michael J. Ciatti, Esq.
Washington, DC 20006-4706
and
MACKENZIE, HUGHES LAW FIRM                   Nancy L. Pontius, Esq.
101 South Salina Street                      Stephen T. Helmer, Esq.

PO Box 4967
Syracuse, NY 13221-4967
and
ISEMAN, CUNNINGHAM LAW FIRM                          Michael J. Cunningham, Esq.
9 Thurlow Terrace
Albany, NY 12203
Attorneys for Defendants Robert Brvenik,
James A. Tuozzolo and Marc A. Malfitano

COSTELLO, COONEY LAW FIRM                            Edward G. Melvin, Esq.
205 South Salina Street                              Robert J. Smith, Esq.
4th Floor
Syracuse, NY 13202
and
KIRKLAND, ELLIS LAW FIRM                             James P. Gillespie, Esq.
655 Fifteenth Street, NW                             Rebecca R. Anzidei, Esq.
Suite 1200
Washington, DC 20005
and
GOODWIN, PROCTER LAW FIRM                            Anthony S. Fiotto, Esq.
Exchange Place                                       Christopher D. Moore, Esq.
53 State Street                                      Kai W. Lyman, Esq.
Boston, MA 02109-2881                                Paul F. Ware, Jr., Esq.
and
ISEMAN, CUNNINGHAM LAW FIRM                          Michael J. Cunningham, Esq.
9 Thurlow Terrace
Albany, NY 12203
Attorneys for Defendant Scott R. Congel

McNamee, Lochner Law Firm                            Michael J. Grygiel, Esq.
677 Broadway
Albany, NY 12207-2503
Attorney for Intervenor Capital Newspapers
Division of the Hearst Corporation, publisher
of the Albany Times Union and The Herald Company

**Norman A. Mordue, Chief Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

In *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) the Second Circuit

remanded to this Court the motion by Herald Company and Capital Newspapers Division of the

Hearst Corporation, Publisher of the Albany Times Union ("intervenors"), to intervene for the

limited purpose of securing access to documents filed under seal.[1]  This Court referred the matter to United States Magistrate Judge Randolph F. Treece.  Magistrate Judge Treece issued an excellent and thorough Report and Recommendation and Order dated March 7, 2006 (Dkt. No. 470), recommending that the Court grant the motion to intervene and making specific recommended findings regarding the continued sealing of the contested documents.  The Court refers the reader to Magistrate Judge Treece's Report and Recommendation and Order for further background information.

Thereafter, plaintiffs submitted objections on March 17, 2006 (Dkt. No. 471); intervenors submitted objections on March 17, 2006 (Dkt. No. 473); and defendants submitted partial objections on March 21, 2006 (Dkt. No. 475).  All parties stipulated on March 27, 2006 (Dkt. No. 477) to file responses to the objections simultaneously on April 4, 2006.  The Court approved the stipulation on March 30, 2006 (Dkt. No. 479).  Responses were filed on April 4, 2006, by plaintiffs (Dkt. No. 483), intervenors (Dkt. No. 484), and defendants (Dkt. No. 487).

In the *Lugosch* decision, the Second Circuit found that a presumption of access applied to the contested documents and stated that continued sealing may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim.  435 F.3d at 124.  That court further observed that the attorney-client privilege might be a compelling reason justifying continued sealing and that,

---

[1]

On June 24, 2005, this Court issued a Memorandum-Decision and Order (Dkt. No. 417) affirming Magistrate Judge Treece's Order (Dkt. No. 404) holding in abeyance the intervenors' motion to intervene for the limited purpose of securing access to documents filed under seal  (Dkt. Nos. 356, 380).  Intervenors filed a notice of appeal to the Second Circuit on July 13, 2005 (Dkt. No. 419).  On January 10, 2006, the Second Circuit handed down the decision in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

-4-

even if applicable, such privilege may be waived if the party asserting it placed in issue the contents of the contested document.  The Second Circuit remanded to this Court for a fact-specific inquiry as to whether (1) the contested documents are subject to attorney-client privilege, and (2) defendants waived the privilege by placing in issue the contents of the privileged information.[2]  *Id.* at 125.  The Second Circuit further observed, based on the terms of the Confidentiality Order, that "it is difficult to see how the defendants can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret[,]" but added that, on remand, "the defendants should have the opportunity to call the district court's attention to any particular circumstances surrounding the production of a contested document." *Id.* at 126.  And that court directed that, in the event that the district court finds that certain documents should continue under seal, it  must make specific, on-the-record findings that higher values necessitate a narrowly tailored sealing.  *Id.*

### DISCUSSION

This Court agrees with Magistrate Judge Treece's conclusion that defendants' disclosure

_____

[2]

The Second Circuit stated:

> We are therefore left with a fact-specific inquiry as to whether (1) the contested documents are subject to attorney-client privilege, and (2) defendants waived the privilege by placing in issue the contents of the privileged information. *In re von Bulow v. von Bulow*, 828 F.2d 94, 102 (2d Cir.1987) (privilege may be waived when holder of privilege makes assertions placing privileged information at issue); *see also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991) ("[P]rivilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."). There is nothing in the record to allow us to review or conduct such an inquiry. Accordingly, we remand for the district court to make the necessary findings.

435 F.3d at 125.

to plaintiffs of documents pursuant to the parties' March 14, 2001 Confidentiality Order (Dkt. No. 55) does not constitute a waiver of privilege.  This Court also agrees with Magistrate Judge Treece that by virtue of the provisions of the Partnership Agreements,[3] and in view of the fact that they are suing in their individual capacities, the minority partners lack authority to waive the attorney-client or work-product privilege on behalf of the Partnerships.

**Undisputed recommendations**

Defendants do not object to Magistrate Judge Treece's conclusion that certain of the documents in issue are not privileged communications.  This Court adopts Magistrate Judge Treece's ruling that the following documents are not privileged: Tabs 6, 8, 10, 11, 13 (p. 1), 14, and 24.  The portions of the deposition of Marc A. Malfitano, Esq. (Tab 26, pp. 234, 235, and 236) which relate to Tab 6 are also unsealed.  The portion of page 56 of Tab 2 (Dkt. No. 371) that relates to Tab 11 is unsealed.

Further, defendants do not object to Magistrate Judge Treece's conclusion that there has been an at-issue waiver regarding the disputed portion of Tab 17.  Defendants do not object to the recommendation that pages 155, 156, 158, 161, and 213 of Tab 29, the deposition transcript of

---

[3] The Partnership Agreements provide:

> The executive committee, with the authority granted to it under the agreement, shall have the exclusive right to manage the business of the Partnership and is hereby authorized to take any action of any kind and to do anything and everything in accordance with the provisions of this agreement.

They further provide:

> [E]xcept as expressly provided hereunder, the authority of any Partner to manage the business of the Partnership shall be exercised only by the Executive committee and, except as expressly so provided, no Partner other than the Executive Committee shall have any control over Partnership.

-6-

James A. Tuozzolo, be unsealed.  Nor do they object to his recommendation that page 168 (line 7) through page 169 (line 5) of Tab 22, John A. Bersani's deposition transcript, be unsealed.  These items are unsealed and available for public viewing.

**Defendants' objections**

Defendants object to Magistrate Judge Treece's recommendations regarding documents at Tabs 5 and 9.

### *Malfitano Memo (Tab 5)*

Magistrate Judge Treece correctly found that Tab 5, a memo from Marc A. Malfitano, Esq. to Michael P. Shanley, Esq. dated June 30, 1999, is not an attorney-client communication but rather is a business memorandum, although it is from one lawyer to another.  Moreover, for the reasons discussed below in connection with the Shearman & Sterling Opinion Letter, the Court also finds that there is an at-issue waiver regarding Tab 5 insofar as it concerns who made certain determinations and whether certain information was provided to the partners.  Tab 5 is unsealed as well as the corresponding deposition testimony in Malfitano's deposition transcript at Tab 26 (pp. 105 [lines 20-25], 106, 107, 108, 110, 111, 112, 113, 114, 116, 117, 118, 119 [lines 1-7 and 21-24], 121, 122, 123, 124, 125, 126, 127, and 128).

### *Hoffman Memo (Tab 9)*

Defendants also object to the unsealing of page 1 of Tab 9, a memo to the file by defendants' counsel Richard S. Hoffman, Esq., dated October 27, 1993.  This reflects attorney work product and is thus privileged.  Magistrate Judge Treece found an at-issue waiver stemming from defendants' argument on the summary judgment motion that the alleged overcharges by Pyramid Management Group ("PMG") to the mall Partnerships could not be part of a fraudulent scheme because the charges were disclosed in the financial statements.

For the same reasons as are discussed below in connection with the Shearman & Sterling Opinion Letter, the Court finds an at-issue waiver with respect to page 1 of this memo. In asserting that the charges to the Partnerships were disclosed in the financial statements and thus could not be fraudulent, defendants placed at issue their alleged knowledge that the disclosed charges, although they appeared to be proper, were actually excessive. In other words, defendants' assertions regarding the charges, in fairness, require disclosure of the protected communication. Accordingly, the Court agrees with Magistrate Judge Treece's recommendation that page 1 of Tab 9 be unsealed.

There is no waiver regarding pages 2 and 3. They remain sealed.

**Plaintiffs' and Intervenors' objections**

*Hoffman Memo (Tab 7)*

Tab 7 is a memo to the file by Richard S. Hoffman, Esq., dated March 8, 1996. The Court agrees with Magistrate Judge Treece that it is privileged and that the privilege has not been waived. That the memo may be relevant to issues in the case does not, without more, create a waiver. *See United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991) Accordingly, Tab 7 and the related references in Tab 1 (redactions on pp. 37 and 38), and Tab 26 (redactions on pp. 237, 238, 239, and 240) shall remain under seal.

*Malfitano Letter (Tab 12)*

Tab 12, a letter dated December 5, 2000, from Marc A. Malfitano, Esq. to Kenneth C. Smurzynski, Esq., is privileged. The privilege has not been waived. Thus, this document remains under seal.

*Malfitano Memo (Tab 13)*

The Court agrees with Magistrate Judge Treece's treatment of Tab 13, a memo from Marc

-8-

A. Malfitano, Esq. dated January 17, 2000.  Page 1 of Tab 13 is unsealed; as noted above, defendants do not object.  The portion of page 56 of Tab 2 (Dkt. No. 371) that relates to page 1 of Tab 13 is likewise unsealed.  The redactions recommended by Magistrate Judge Treece on pages 2 and 3 of Tab 13 are approved.

_Shearman & Sterling Opinion Letter (Tab 18) and related items_

The Shearman & Sterling Opinion Letter (Tab 18), was written on July 6, 1999 by outside counsel in response to the letter of June 24, 1999 (Tab 15) by Michael P. Shanley, Esq. on behalf of defendants.  Shanley's letter specifically requested legal opinions regarding aspects of the purchase in 1990 of the Bonwit Teller department store chain ("Bonwit") by Bonwit Teller Limited Partnership and the ongoing obligations stemming therefrom.[4]  The Court agrees with Magistrate Judge Treece that these letters are privileged.

Plaintiffs contend that defendants have effected an at-issue waiver of the privilege regarding these letters.  One of plaintiffs' claims in this action is that, through their allegedly false and misleading financial reporting, defendants wrongfully shifted onto Crossgates and Buffalo certain acquisition costs and operating losses of Bonwit, and that they continue to do so. According to the report of plaintiffs' expert, Legal & Scientific Analysis Group, Inc. ("LSAG"), beginning in 2000, Crossgates began paying back the amounts RDE owed to WHA, and "all the cash flow generated by Crossgates was paid to RDE and no distributions were made to the

---

[4]

The general partner in Bonwit Teller Limited Partnership is Bontel Corporation, which is owned and controlled by Robert J. Congel and his family.  The limited partner of Bonwit Teller Limited Partnership is Retail Distribution Enterprises ("RDE"), a general partnership comprising Pyramid Crossgates Company ("Crossgates"), Pyramid Company of Buffalo ("Buffalo") and Pyramid Company of Onondaga.  Plaintiffs Lugosch, Ungerer, and Steingraber are or were partners in Crossgates and/or Buffalo.  It appears that RDE borrowed funds for the Bonwit acquisition from defendant Woodchuck Hill Assoc. ("WHA"), a partnership controlled by Robert J. Congel.

partners in 2000 and 2001."  The LSAG report states that, through December 31, 2000,

Crossgates and Buffalo each were charged with $13.2 million dollars of Bonwit's losses.

Defendants' motions for summary judgment seek dismissal of plaintiffs' Bonwit-related

claims, on the ground that plaintiffs "knowingly and actively participat[ed] in the business

practices that they now claim were concealed from them" or at least had "ample access to

documents and discussions disclosing the complained-of practices[.]"[5]  More specifically, in

paragraph 391 of their Statement of Undisputed Facts in support of summary judgment,

defendants asserted the following: "Plaintiffs were aware of the Bonwit Teller acquisition and its

ownership structure, as demonstrated by plaintiffs' testimony regarding Bonwit Teller, documents

reflecting their participation in the decision-making process, financial and other documents, and

plaintiffs' own expert testimony."  In their Memorandum of Law in support of their motion for

summary judgment, defendants contended:

> As to whether the acquisition of Bonwit could be part of a "scheme to defraud," the
> undisputed evidence establishes that plaintiffs: (i) were intimately involved in Pyramid's
> decision to purchase Bonwit Teller, including participating in daily morning meetings on
> the topic  – indeed, several plaintiffs were the most enthusiastic advocates of the
> acquisition; (ii) were fully aware of the downside risk of the purchase; (iii) were aware of
> the expansion of Bonwit Teller into the Crossgates Mall; (iv) executed a partnership
> incumbency certificate on behalf of the Buffalo Partnership ratifying the decision to invest

---

[5]
Defendants' Reply to Plaintiffs' and Newspapers' Objections to the Report and Recommendation
and Order states on p. 9:

> Defendants' arguments that there was no scheme to defraud and no justifiable reliance rest
> on the undisputed evidence that Plaintiffs had ample access to documents and discussions
> disclosing the complained-of practices, and not on whether Plaintiffs actually knew about
> those practices. Reliance does not depend on what the allegedly defrauded party knew
> where, as here, that party had access to documents disclosing the allegedly-fraudulent
> behavior.

(Dkt. No. 487, citation to record omitted.)

-10-

> in Bonwit Teller and to participate in the Bonwit ownership structure; (v) were explicitly informed, in writing, every year beginning in 1990, as to the exact amount of the Bonwit Teller related debt for which their partnerships were responsible; (vi) spoke repeatedly and enthusiastically to the press about the Bonwit transaction; and (vii) year after year, commencing as early as 1990, submitted tax forms to the IRS and received tax benefits for the very Bonwit Teller debt they now claim was never disclosed to them.

(Citations to record omitted.)  In defending against Bonwit-related claims, defendants rely on their disclosures regarding Bonwit-related obligations not only in the early 1990's, but also in and after 1999.  For example, they point to disclosures in the financial statements for Buffalo from 1990 through 1999.  And the records attached to the declaration of defendants' expert, Stanley R. Perla, CPA, indicate that Crossgates and Buffalo were still reporting capital contributions and net losses relating to Bonwit in 1999, 2000 and 2001.

In the context of this case, the Court finds that, by contending that they disclosed to plaintiffs the Bonwit-related business practices from 1990 through 1999 or later (or that plaintiffs had ample access to such disclosures), defendants placed in issue their alleged awareness that the disclosures misleadingly represented that Crossgates and Buffalo were obligated to pay debt (and/or loss) that in fact they were not obligated to pay.  In particular, defendants placed in issue communications bearing on whether defendants had grounds to believe that Crossgates and Buffalo were not liable for at least some of the debt (and/or loss) allocated to them, and whether defendants nevertheless concealed such grounds, used their position of confidence to impose the debt (and/or loss) on Crossgates and Buffalo from 1990 to 2001, and purposefully provided misleading financial statements and other documents to plaintiffs.  Defendants' 1999 request for legal opinions regarding Bonwit-related business practices, as well as the substance of those legal opinions and related items, are communications bearing on these questions.  Accordingly, they are subject to an at-issue waiver.

-11-

This Court's finding of at-issue waiver regarding the Shearman & Sterling Opinion Letter and related items is not based merely on a finding of possible relevance.  *See Bilzerian*, 926 F.2d at 1292.  Nor does the Court base this ruling on the view that, by arguing that there was a "culture of disclosure and transparency," defendants have placed in issue every undisclosed item bearing on any issue in the case.  Rather, applying the law as articulated by the Second Circuit on the appeal herein, 435 F.3d at 125, the Court finds that, in fairness, defendants' assertions regarding their disclosure of Bonwit-related business practices require examination of the protected communications in dispute.  Thus, the privilege is implicitly waived with respect to those communications.  *See Bilzerian*, 926 F.2d at 1292-93; *In re von Bulow v. von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987).

Accordingly, in this respect the Court disagrees with Magistrate Judge Treece and holds that defendants impliedly waived the attorney-client privilege with respect to the Shearman & Sterling Opinion Letter and related documents and testimony.  The following items or redacted portions thereof are unsealed: Tab 15; Tab 16; Tab 18; Tab 19 (principal documents at issue); and corresponding references: Tab 1 (pp. 29, 30, 45, 46, and 75); Tab 2 (pp. 109 and 110); Tab 3 (pp. 12 and 13); Tab 4 (p. 6, n. 9); Tab 26 (redacted portions of pp. 54, 55, 56, 57, 66, 67, 68, 94, 95, 96, 98, 99, 100, 102, 103, 104, 105 [lines 1-10], 115, 119 [lines 8-14 and 18-19], 120, 132, and 133); Tab 28 (redacted pp. 157, 158, 159, 160, 161, 162, 163, 164, 165, 167, 256, 257, and 258); Tab 29 (redacted pp. 64, 65, 66, 67, and 132).

### *Shelly Letter and Exhibits (Tab 20)*

Tab 20 is a letter-memorandum from plaintiffs' counsel, Jeffrey S. Shelly, Esq., to Magistrate Judge Treece dated September 12, 2003.  As set forth in the following paragraphs, Magistrate Judge Treece recommends redactions from three items attached to the September 12,

2003 letter-memorandum.  He further recommends corresponding redactions from the letter-memorandum of references to redacted portions of those three items.

The disputed items at Tab 20 concern alleged overcharges by PMG to The Limited and other tenants of the various malls.  Unlike the alleged overcharges by PMG to the Partnerships, there is no at-issue waiver regarding PMG's charges to tenants.  Essentially, plaintiffs argue that evidence of alleged overcharges to tenants is relevant to their claims; relevance does not, however, establish a waiver.  *See Bilzerian*, 926 F.2d at 1292.

The Court adopts Magistrate Judge Treece's handling of Exh. 4 to Tab 20, a meeting summary by Eric Dadd, Esq., with a fax banner date of November 13, 2000.  Magistrate Judge Treece properly found that portions were privileged and that there was no waiver.  Thus, those portions shall be redacted and remain under seal; they appear on every page of the meeting summary (pp. 1-5).  The Court also adopts Magistrate Judge Treece's  redaction of references to privileged portions of Exh. 4 from the transcript of the deposition of Marc A. Malfitano, Esq., Exh. 3 to Tab 20.  Thus, the recommended redactions shall be made on the following pages of Malfitano's deposition: 148, 149, 150, 151, 154, 155, 156, 157, 159, 160, 164, 222, 242, 244, 245, 246, 247, and 248.  And the Court agrees with Magistrate Judge Treece's recommended redaction at page 36 of Tab 1, which refers to this meeting summary.

The Court also agrees with Magistrate Judge Treece that Exh. 6 to Tab 20, comprising the October 17, 2000 memo from Malfitano, and the accompanying October 16, 2000 draft letter, is privileged both as an attorney-client communication and as attorney work product.  The privilege has not been waived.  Thus, it remains under seal.

Finally, the Court agrees with Magistrate Judge Treece's recommended redactions from the second page of the September 12, 2003 letter-memorandum from plaintiffs' counsel to

-13-

Magistrate Judge Treece at Tab 20.

*Meeting Summary and Depositions (Tab 21)*

Tab 21, Exh. 6, is the meeting summary by Dadd which was already discussed above (as Tab 20, Exh. 4); the redacted portions remain under seal. Tab 21 also includes pages of the transcript of the deposition of Malfitano (Exh. 10); defendants do not object to Magistrate Judge Treece's finding of waiver and his unsealing of the related portions of the transcript (Tab 21, Exh. 10, pp. 172 and 173; also at Tab 26). Tab 21 further includes a portion of the transcript of the deposition of James A. Tuozzolo (Tab 21, Exh. 11; also at Tab 29); the Court agrees with Magistrate Judge Treece that lines 12-25 of page 181 of Tuozzolo's deposition transcript should remain sealed.

*Bersani Deposition (Tab 22)*

Tab 22 is a portion of the transcript of the deposition of John A. Bersani. Defendants do not object to Magistrate Judge Treece's recommendation that page 168 (line 7) through page 169 (line 5) be unsealed. Magistrate Judge Treece recommends that the last word on page 167 and the first 6 lines on page 168 remain sealed as subject to an unwaived privilege. The Court agrees.

*Mammolito Deposition (Tab 23)*

Michael A. Mammolito, an employee of PMG, testified about his conversations with two lawyers (one outside counsel, one in-house counsel) representing PMG with respect to Crossgates' tax litigation with the Town of Guilderland. The Court agrees with Magistrate Judge Treece that these conversations are protected by attorney-client and attorney work product privilege, and that there has been no waiver. The Court approves the recommended redactions at pp. 48, 49, 50, 95, 96, 97, 98, and 99.

*Kenan Deposition (Tab 25)*

-14-

Magistrate Judge Treece found that portions of the deposition transcript of Bruce Kenan, at Tab 25, were subject to an unwaived privilege.  These are page 64 (line 25) through page 65 (line 3).  He also recommends that the redacted portions of pages 151 and 152 be unsealed and available for public viewing. The Court agrees.

*Malfitano Deposition (Tab 26)*

In accordance with the above rulings, the redacted portions of the following pages of Tab 26 are unsealed and the pages in their entirety are available to for public viewing:  54, 55, 56, 57, 66, 67, 68, 94, 95, 96, 98, 99, 100, 102, 103, 104, 105, 106, 107, 108, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 132, 133, 138, 139, 143, 144, 145, 172, 173, 203, 234, 235, and 236.

The redacted portions of the following pages of Tab 26 shall remain sealed:  86, 87, 148, 149, 150, 151, 154, 155, 156, 157, 159, 160, 164, 222, 237, 238, 239, 240, 242, 244, 245, 246, 247, and 248.

*Murphy Deposition (Tab 27)*

The Court agrees with Magistrate Judge Treece that certain portions of the transcript of the deposition testimony of Michele Murphy are subject to unwaived privilege.  Accordingly, the recommended redactions on pages 66, 68 and 70 are approved.

*Shanley Deposition (Tab 28)*

Tab 28, portions of the transcript of the deposition of Michael P. Shanley, Esq., has already been addressed in connection with the Shearman & Sterling Opinion Letter (Tab 18) and related items.  The redacted portions at Tab 28 are unsealed and are available for public viewing: pages 157, 158, 159, 160, 161, 162, 163, 164, 165, 167, 256, 257, and 258.

*Tuozzolo Deposition (Tab 29)*

-15-

The Court has already discussed certain portions of the transcript of the deposition of James A. Tuozzolo in connection with the Shearman & Sterling Opinion Letter (Tab 18) and related items; the Court directs that redactions at pages 64, 65, 66, 67, and 132 of Tab 29 be unsealed.

The Court has also addressed certain portions of this transcript in connection with the meeting summary (Tab 21, Exh. 11). As stated, the Court agrees with Magistrate Judge Treece that lines 12-25 of page 181 of the transcript (Tab 21, Exh. 11; also at Tab 29) should remain sealed.

Tuozzolo was also questioned regarding Exh. 6 to Tab 20 (the October 17, 2000 memo from Malfitano and the October 16, 2000 draft letter). These items are subject to an unwaived privilege; accordingly, Tuozzolo's corresponding deposition testimony is privileged. Thus, the Court upholds the recommended redactions at Tab 29, pages 135, 141, 142, 152. The redaction at page 166 is also subject to an unwaived privilege and shall remain sealed.

Defendants do not object to the recommendation that the redacted portions of pages 155, 156, 158, 161, and 213 be unsealed.

*Viggiano Deposition (Tab 30)*

Magistrate Judge Treece recommends redactions on pages 116, 117, 118, 120, 121, 124, 125, 134, 144, 145, 146, 170, 171, 172, 183, 184, 200, and 201. The Court agrees that these items are privileged and that there has been no waiver. Accordingly, they remain sealed.

## CONCLUSION

It is therefore

ORDERED that the Report and Recommendation and Order of United States Magistrate Judge Randolph F. Treece (Dkt. No. 470) is rejected in part and adopted in part in accordance

with this Memorandum-Decision and Order; and it is further

ORDERED that the motion by Herald Company and Capital Newspapers Division of the Hearst Corporation, Publisher of the Albany Times Union (Dkt. Nos. 356, 380) is granted in part and denied in part in accordance with this Memorandum-Decision and Order; and it is further

ORDERED that movants are given leave to intervene for the purpose of securing access to documents filed under seal, subject to the limitations set forth herein; and it is further

ORDERED that movants' request for access to documents filed under seal is granted in part and denied in part as follows:

       Tab 1: redactions on pages 36, 37 and 38 remain under seal; redactions at pages 29, 30, 45, 46 and 75 are unsealed and available for public viewing.

       Tab 2: redactions on pages 56, 109 and 110 are unsealed and available for public viewing.

       Tab 3: redactions on pages 12 and 13 are unsealed and available for public viewing.

       Tab 4: redaction on page 6, n. 9, is unsealed and available for public viewing.

       Tab 5: unsealed and available for public viewing.

       Tab 6: unsealed and available for public viewing.

       Tab 7: remains under seal.

       Tab 8: unsealed and available for public viewing.

       Tab 9: page 1 is unsealed and available for public viewing; pages 2 and 3 remain under seal.

       Tab 10: unsealed and available for public viewing.

       Tab 11: unsealed and available for public viewing.

       Tab 12: remains under seal.

       Tab13: page 1 is unsealed and available for public viewing; redactions on pages 2 and 3 remain under seal.

-17-

Tab 14: unsealed and available for public viewing.

Tab 15: unsealed and available for public viewing.

Tab 16: unsealed and available for public viewing.

Tab 17: unsealed and available for public viewing.

Tab 18: unsealed and available for public viewing.

Tab 19: unsealed and available for public viewing.

Tab 20: Letter to Magistrate Judge Treece, redactions remain sealed; Exh 3, redactions at pages 148, 149, 150, 151, 154, 155, 156, 157, 159, 160, 164, 222, 242, 244, 245, 246, 247, and 248 remain sealed; Exh. 4, redactions remain sealed; Exh. 6 remains sealed.

Tab 21: Exh. 6, redactions remain sealed; Exh. 10, pages 172 and 173 are unsealed and available for public viewing; Exh. 11, redaction at page 181 (lines 12-25) remains sealed.

Tab 22: page 168 (line 7) through page 169 (line 5) are unsealed and available for public viewing; the last word on page 167 and the first 6 lines on page 168 remain sealed.

Tab 23: redactions at pages 48, 49, 50, 95, 96, 97, 98, and 99 remain sealed.

Tab 24: unsealed and available for public viewing.

Tab 25: redaction on page 64 (line 25) through page 65 (line 3) remains sealed; pages 151 and 152 are unsealed and available for public viewing.

Tab 26: Redactions at pages 54, 55, 56, 57, 66, 67, 68, 94, 95, 96, 98, 99, 100, 102, 103, 104, 105, 106, 107, 108, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 132, 133, 138, 139, 143, 144, 145, 172, 173, 203, 234, 235, and 236 are unsealed and the pages in their entirety are available to for public viewing; redactions at pages 86, 87, 148, 149, 150, 151, 154, 155, 156, 157, 159, 160, 164, 222, 237, 238, 239, 240, 242, 244, 245, 246, 247, and 248 remain sealed.

Tab 27: redactions on pages 66, 68 and 70 remain sealed.

Tab 28: redactions on pages 157, 158, 159, 160, 161, 162, 163, 164, 165, 167, 256, 257, and 258 are unsealed and are available for public viewing.

Tab 29: redactions on pages 64, 65, 66, 67, 132, 155, 156, 158, 161, and 213 are unsealed

-18-

and are available for public viewing; redactions on pages 135, 141, 142, 152, 166 and 181 (lines 12-25) remain sealed.

Tab 30: redactions on pages 116, 117, 118, 120, 121, 124, 125, 134, 144, 145, 146, 170, 171, 172, 183, 184, 200, and 201 remain sealed.

IT IS SO ORDERED.

May 5, 2006
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

-19-